IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAVID OWENS,

Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

Defendant.

**8:19CV71**

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Union Pacific Railroad Company's ("U.P.") motion for summary judgment pursuant to Fed. R. Civ. P. 56, Filing No. 16. This is an action under the Federal Employer's Liability act ("FELA"), 45 U.S.C. § 51 *et seq.* The plaintiff, David Owens, worked as a switchman, brakeman, and conductor at U.P., and/or its predecessors-in-interest, from 1977 to 2011. Owens alleges that while he was employed at U.P., he was negligently exposed to various toxic substances and carcinogens including diesel fuel/exhaust that caused or contributed to his development of kidney cancer.

The defendant contends that Owens's claim, filed on February 11, 2019, is time-barred as a matter of law because undisputed evidence shows that the action was filed more than three years after he was diagnosed with kidney cancer in June of 2015. The defendant bases its motion on the date of diagnosis, not when the plaintiff knew, or should have known, that his kidney cancer was related to his exposure to toxins while working for the railroad. Owens contends that his suit was filed in a timely manner because he

1

did not know that his kidney cancer was related to his employment with U.P. until 2017, and he filed suit within the FELA's three-year statute of limitations.

## I.     BACKGROUND

Owens worked for U.P. for thirty-four years as a switchman, brakeman, and conductor. Filing No. 1 at 2.  During his time at U.P., Owens alleges that he was exposed to toxic substances including diesel fuel, diesel fumes and exhaust, benzene, creosote, and asbestos in the course of his employment. *Id.*  Owens testified that during his years with U.P., locomotive engines would create exhaust consisting of heavy, thick smoke. Filing No. 22, Ex. 1, Deposition of David Owens at 48.  Owens, and other employees, would often make complaints about the amount of exhaust they were being exposed to, including how employees would be positioned between two diesel exhaust sources that would run constantly.  *Id.* at 31.  Owens also testified that exhaust would often penetrate the cabs of the locomotives he would be riding in, and exhaust and smoke would pour in and could fill the entire cab.  *Id.* at 32.  Owens also stated during his deposition that he and other employees would often be forced to have contact with, inhale, be around, and smell different chemicals and diesel fumes, sometimes with protective equipment and sometimes without.  *Id.* at 23.

Owens was previously diagnosed with colon cancer in February of 2011 and underwent a colectomy to remove the cancerous portion of his colon.  Filing No. 21 at 12 and Filing No. 22, Exhibit 1 at 15.  In August of 2016, James R. Bruce, M.D. opined that the plaintiff's colon cancer was related to asbestos exposure.  Filing No. 21 at 12.

Owens was diagnosed with kidney cancer in June of 2015 and discussed it with his doctor.  Filing No. 21 at 12.  Owens did not undergo any chemotherapy or radiation

therapy for the treatment of his kidney cancer. Filing No. 22 Ex.1 at 35.  On July 14, 2015, Owens underwent a partial nephrectomy in which a cancerous portion of the kidney was removed. Id.  Owens recalls having a conversation with his diagnosing doctor regarding the cause of his cancer, but the doctor did not know of the cause of his kidney cancer, only stating that Owens's previous colon cancer had not metastasized to his kidney and cause the kidney cancer. Id. at 36.  Owens did not inquire further into the cause of his kidney cancer. Id.  Owens was not made aware that his cancer could have been caused by his employment at the railroad until 2017. Id. at 40.  On February 11, 2019, the plaintiff filed a complaint related only to his kidney cancer, stating that the cancer was related to his exposure to toxins during his employment. Filing No. 1.

## II.    STANDARD OF REVIEW

### A.   Summary Judgment

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discover and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celeotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th

Cir. 2011) (en banc) (quoting *Celeotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing there is a genuine issue for trial." *Id.* (quoting *Celeotex*, 477 U.S. at 324). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The evidence must be viewed in the light most favorable to the nonmoving part, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.*

B.  The FELA

Railroads are liable in damages for an employee's "injury or death resulting in whole or in part from the Railroad's negligence." 45 U.S.C. § 51. Appraising negligence under FELA "turns on principles of common law . . . , subject to such qualifications [that] Congress" introduces. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543-44 (1994) (noting the qualifications are the modification or abrogation of several common-law defenses to liability, including contributory negligence and assumption of risk). The FELA is to be liberally construed, but it is not a workers' compensation statute, and the basis of liability is "negligence, not the fact that injuries occur." *Id.* at 543.

FELA imposes upon employers a continuous duty to provide a reasonably safe place to work. *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889 (8th Cir. 2012). The railroad's duty to provide a safe workplace is a duty of reasonable care. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011).

However, "a relaxed standard of causation applied under FELA." *Gottshall*, 512 U.S. at 543; *see Holloway v. Union Pac. R.R. Co.*, 762 F. App'x 350, 352 (8th Cir. 2019). The test is simply whether the railroad's negligence played a part—no matter how small— in bringing about the injury. *McBride*, 564 U.S. at 705; *see also Paul v. Mo. Pac. R.R. Co.*, 963 F.2d 1058, 1061 (8th Cir. 1992) (stating that "[u]nder FELA, the plaintiff carries only a slight burden on causation."); *Fletcher v. Union Pac. R.R. Co.*, 621 F.2d 902, 909 (8th Cir. 1980) ("The test of causation under the FELA is whether the railroad's negligence played any part, however small, in the injury which is the subject of the suit."). In FELA cases the negligence of the defendant need not be the sole cause or whole cause of the plaintiff's injuries.[1] *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994).

Despite the lower causation standard under FELA, a plaintiff must still demonstrate some causal connection between a defendant's negligence and his or her injuries. *Brooks v. Union Pac. R.R. Co.*, 620 F.3d 896, 899 (8th Cir. 2010). In order to avoid summary judgment, a FELA plaintiff is required to produce admissible evidence that the railroad's negligence played a part in causing his alleged injury. *Id.* If an injury has "no obvious origin, 'expert testimony is necessary to establish even that small quantum of causation required by FELA.'" *Brooks*, 620 F.3d at 899 (quoting *Clarr*, 29 F.3d at 504); *see also Mayhew v. Bel S.S. Co.*, 917 F.2d 961, 963 (6th Cir. 1990) ("[A]lthough a [FELA] plaintiff need not make a showing that the employer's negligence was the sole cause, there must be a sufficient showing (i.e. more than a possibility) that a causal relation existed.").

---

[1] In Contrast, "[t]o establish causation in a common law negligence action, a plaintiff generally must show that the defendant's conduct was a 'substantial factor in bringing about the harm.'" *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006) (quoting Restatement 2d of Torts § 431(a)).

C.  Statute of Limitations

The statute of limitations for FELA actions is three years from the day the cause of action accrued. 45 U.S.C. § 56. Where a claimant has no reason to know of his injury when it is sustained, his cause of action under the FELA does not accrue, and limitations therefore do not begin to run, until the claimant becomes aware that he has been injured *and* that his injury is work related. *Urie v. Thompson*, 337 U.S. 163, 169 (1949) (emphasis added). When the injury is not a single traumatic one with immediate symptoms, but rather a latent one with symptoms appearing over time, "the cause of actions does not accrue until the employee is aware or should be aware of his condition." *White v. Union Pac. R.R. Co.*, 867 F.3d 997, 1001 (8th Cir. 2017) (quoting *Fletcher v. Union Pac. R.R. Co.*, 621 F.2d 902, 906 (8th Cir. 1980)). In a case involving exposure to a toxin, "'inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time . . . the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves[.]'" *Urie*, 337 U.S. at 170 (quoting *Associate Indem. Corp. v. Industrial Accident Comm'n*, 12 P.2d 1075, 1076 (Cal. Dist. Ct. App. 1932)). Generally, a plaintiff will know he has been injured "when his condition is diagnosed, unless it is shown that the plaintiff 'should have known' at an earlier date that he was injured." *Young v. Clinchfield R.R. Co.*, 288 F.2d 499, 503 (4th Cir. 1961).

The employee must also know, or have reason to know, the condition's cause. *White*, 867 F.3d at 1001; *see also* *Mix v. Del. & Hudson Ry. Co.*, 345 F.3d 82, 90 (2d Cir. 2003); *Campbell v. Grand Truck W.R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001); *Albert v. Maine Cent. R. Co.*, 905 F.2d 541, 544 (1st Cir. 1990); *Townley v. Norfolk & W. Ry. Co.*,

887 F.2d 498, 500 (4th Cir. 1989); *Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986); *DuBose v. Kansas City S. Ry. Co.*, 729 F.2d 1026, 1030 (5th Cir. 1984) (all holding that the statute of limitations begins to run when the employee becomes aware not only of his disease but also of its cause). "Any plaintiff who is blamelessly ignorant of existence or cause of his injury shall be accorded the benefits of the discovery rule." *Stoleson v. United States*, 629 F.2d 1265, 1269 (7th Cir. 1980) (involving an FTCA applying the same discovery rule). The discovery rule is applied in federal question cases whenever a plaintiff is not aware of and has no reasonable opportunity to discover the critical facts with respect to his injury and its cause. *Townley*, 887 F.2d at 501.

When a plaintiff discovers or, in the exercise of reasonable diligence, should discover the "critical facts" of injury and cause, the statute then begins to run—"accrual" of a claim need not "await awareness by the plaintiff that his injury was negligently inflicted." *United States v. Kubrick*, 444 U.S. 111, 123 (1979); *see also White*, 867 F.3d at 1002-03 (stating that once a condition manifests itself, the question becomes whether the plaintiff knew or, through the exercise of reasonable diligence, should have known of the cause of his injury). A claim accrues when one reasonably should know that his symptoms are fairly attributable to a workplace injury. *White*, 867 F.3d at 1003. This rule imposes on injured plaintiffs an affirmative duty to investigate the potential cause of known injury. *Tolston v. Nat'l R.R. Passenger Corp.*, 102 F.3d 863, 865 (7th Cir. 1996).

Both knowledge of the injury and of its governing cause require an objective inquiry into when a claimant knew or should have known, in the exercise of reasonable diligence, the "'essential facts of injury and cause.'" *White*, 867 F.3d at 1001 (quoting *Fries v. Chi. & Nw. Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990)). All that is required is that the

plaintiff know or have reason to know of a potential cause—actual knowledge of causation is not necessary to a finding that a cause of action has accrued. *Fries*, 909 F.2d at 1096. A plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury "can protect himself by seeking advice in the medical and legal community." *Kubrick*, 444 U.S. at 123.

"When a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist and whether medical advice suggests an erroneous causal connection or otherwise lays to rest a plaintiff's suspicion regarding what caused his injury." *Dubose*, 729 F.2d at 1031 (discussing constructive knowledge). A two-part analysis governs whether a plaintiff reasonably should have known of his or her claim. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1151-52 (9th Cir. 2002). The goal of the analysis is to evaluate when a reasonable person would have connected his or her symptoms to their alleged cause. *Id.* at 1152. The first consideration is whether a reasonable person in the plaintiff's situation would have expected to inquire about the cause of his or her injury in the first place. *Id.* at 1150 (referring to inquiry notice and "whether a reasonable person would have inquired about the cause of his injury in light of public knowledge and publicity). "Particularly when a plaintiff has cancer, the answer to [the question whether a plaintiff could reasonably have been expected to make an inquiry] may depend on whether there are a number of potential causes." *Id.* Because "'there are many suspected causes of cancer, including those that are natural or non-negligent and would not give rise to a legal cause of action,'" a plaintiff, "'on learning that he has cancer, lacks the usual incentive to investigate the possibility that the known injury may give rise to a legal claim.'" *Id.* (quoting *Maughan v.*

*SW Servicing, Inc.*, 758 F.2d 1381, 1385 (10th Cir. 1985); *cf. Fries*, 909 F.2d at 1096 (rejecting "the idea that when a plaintiff suspects several causes, the cause of action does not accrue until the governing, or even most probable, cause is known").

If the facts indicate a plaintiff is on inquiry notice, the second consideration is "whether [an inquiry] would have disclosed the nature and cause of plaintiff's injury so as to put him on notice of his claim." *Id.*; *see also Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1389 (10th Cir. 1985) (finding a genuine issue of material fact on the question of when the plaintiffs knew or should have known of the facts constituting their cause of action and stating that a cumulation of public information linking radiation and leukemia insufficient as a matter of law to put a reasonably diligent plaintiff on notice to investigate, where the plaintiffs had asked their doctors what had caused the leukemia and were told that the cause was unknown). The second step "focuses on whether, if the Plaintiffs had inquired about the cause of their illnesses, the result of that inquiry would have provided Plaintiffs with knowledge of the connections between the injury and its cause." *O'Connor*, 311 F.3d at 1155-56.

Subjective suspicion that an illness was work-related is not necessarily enough to trigger accrual of a limitations period. *Stoleson*, 629 F.2d at 1267. Fixing the time of accrual at the time of a plaintiff's suspicion when medical science did not at that time recognize the causal connection, "would provide [plaintiff] with nothing more than a delusive remedy." *Id.*; *see also Bayless v. United States*, 767 F3d 958, 967-68 (10th Cir. 2014) (finding that, despite her suspicions over sixteen years a claimant suffering from a mysterious debilitating illness did not know, or have reason to know, that her illness was caused by exposure to nerve gas until she received results of a test that caused her

9

doctor to diagnose her with toxic encephalopathy from exposure to toxins in the workplace); *see also Rosales v. United States*, 824 F.2d 799, 805 (9th Cir. 1987) ("Ordinarily, a plaintiff cannot be expected to discover the general medical cause of his injury even before the doctors themselves are able to do so."); *Nicolazzo v. United States*, 786 F.2d 454, 456 (1st Cir. 1986) ("It was only when [the plaintiff] received a correct diagnosis . . . that the factual predicate of his injury . . . became known to him."); *Osborn v. United States*, 918 F.2d 724, 733 (8th Cir. 1990) (rejecting the government's argument that the plaintiff's mother should have known the cause of plaintiff's seizure "when the doctors, including specialists . . . had not yet reached a conclusion"); *Harrison v. United States*, 708 F.2d 1023, 1028 (5th Cir. 1983) (statute tolled because "[i]t would be unreasonable to hold [a plaintiff] to a higher degree of medical competence and understanding than the many medical experts she consulted."). Thus, there is a legal distinction between one's own suspicion that something is a cause and the requisite objective knowledge that begins the accrual clock. *See Bayless*, 767 F.3d at 967. While in some circumstances a lay person's suspicion might be sufficient to trigger the statute, it cannot do so when a plaintiff confronts "demonstrable evidence debunking her own suspicions." *Id.* at 969-70. Nonetheless, "compelling" or "certain" proof of a cause is not a requirement before accrual may begin, nor does a plaintiff in every case need medical or scientific confirmation of a cause before the statute of limitations begins. *Id.*; *see, e.g., Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998); *Nemmers v. United States*, 795 F.2d 628, 631 (7th Cir. 1986). Whether there exists a "medically recognized and documental causal link between the employee's symptoms and his working conditions," is one factor to consider. *Stoleson*, 629 F.2d at 1267.

Application of the discovery rule involves determining what the plaintiff knew or should have known, which is a factual question that is appropriate for the trier of fact. *Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 482 (1st Cir. 2010); *see also Genereux c. Am. Beryllia Corp.*, 577 F.3d 360, 360 (1st Cir. 2009) (stating that determining when a plaintiff had notice of the likely cause of an injury is an example of such a factual determination); *Green v. CSX Transp., Inc.*, 414 F.3d 758, 764 (7th Cir. 2005) (finding a fact question on whether the plaintiff's intermittent pain in her shoulder would have been sufficient to put a reasonable person on notice that she had suffered a cognizable work-related injury); *Smith v. States Marine Int'l, Inc.*, 864 F.2d 410, 412 (5th Cir. 1989) (finding an issue of fact on whether the plaintiff should have appreciated that his hearing loss was attributable to long-term exposure to loud noises).

## III.   DISCUSSION

The Court finds the defendant has not shown that it is entitled to a summary judgment of dismissal based on the statute of limitations.  The evidence presently before the Court does not show conclusively that the plaintiff was aware of the critical fact that his work on the railroad could have caused his kidney cancer so as to be barred by the statute of limitations.  His deposition testimony establishes only that he knew some aspects of his work over thirty-four years may have been bad for his health.  That is different than having knowledge of the fact that exposures at work caused his cancer.[2] The defendant has not shown that Owens was ever informed by a doctor, or by anyone,

---

[2] At the deposition, the defendant alluded to certain training on the harms of asbestos and diesel exhaust and to warning decals, but the plaintiff did not recall the training.  The Court has not been presented with evidence of what knowledge the training would have imparted or whether and when the decals were placed on locomotives.  This case is factually distinguishable from *Hunt v. Union Pac. R.R. Company*, No. 8:18CV55, 2020 WL 58435, at *2-*3 (D. Neb. Jan. 6, 2020), wherein the plaintiff admitted that he was aware of the Proposition 65 stickers on locomotives but had been told by co-workers of the danger of silica sand to his health.

that there was a connection between his work on the railroad and his development of kidney cancer. In fact, upon his diagnosis in June of 2015, he inquired whether his previous colon cancer, which he believed to be related to asbestos exposure, was related to his newly diagnosed kidney cancer, and was told by his doctor that it was not related.

The evidence does not show that the plaintiff may have suspected at the time of the diagnosis that his work was connected to the cancer diagnosis. He conducted some investigation—he asked his doctors whether the kidney cancer may be related to his past colon cancer and was told by his doctor that it was not related. There is no evidence that a reasonable person, in the face of such a response, would have continued to connect the cancer to exposures at work. Nor has the defendant shown that there was publicly available information, notoriety, news reports, publicity, or knowledge from other sources linking kidney cancer to the sort of environmental exposures Owens had so as to prompt further inquiry. Also, there is no evidence that a more diligent search would have resulted in a different outcome.

Nothing in the record indicates that a reasonably diligent person would have done more to discern the cause, or that a more searching inquiry would have provided Owens with knowledge of the connection between the cancer and his exposures. There is no evidence that a timely investigation would have revealed the relationship between Owens's exposures at the Railroad and his kidney cancer. The doctors' responses arguably laid to rest any suspicion the plaintiff might have had as to the cause of his injury. The record shows Owens made his inquiries of the doctors close to the time of the initial diagnosis in 2015. Owens cannot be presumed to have known more than the doctors did at that time about the cause of the cancer.

12

There is no evidence that Owens acquired any additional information in the following years that would trigger a duty to investigate more thoroughly. On this evidence, the Court cannot make a finding as a matter of law that Owens should have known the cause of the cancer was work-related or that he was not reasonably diligent in investigating the cause. There is a genuine issue of material fact on the plaintiff's reasonable diligence that a jury must resolve. Accordingly,

IT IS ORDERED that the defendant's motion for summary judgment (Filing No. 16) is denied.

Dated this 15th day of April, 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge